## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) BRENDA L. SHIPMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No.** CIV-17-824-R |
| **(1) CREST DISCOUNT FOODS, INC.,** | ) | |
| **a Foreign for Profit Corporation,** | ) | **JURY TRIAL DEMANDED** |
| | ) | **ATTORNEY'S LIEN CLAIMED** |
| **Defendant.** | ) | |

## COMPLAINT

COMES NOW Plaintiff, Brenda L. Shipman, ("Plaintiff"), through undersigned counsel, and hereby submit the following Complaint against Crest Discount Foods, Inc., ("Defendant"), and states and alleges as follows:

## JURISDICTION AND VENUE

1.  This action arises under the Equal Pay Act of 1963, 29 U.S.C §206(d), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and the laws of the State of Oklahoma.

2.  The acts and/or omissions giving rise to this lawsuit occurred in Oklahoma County, State of Oklahoma.

3.  This Court has jurisdiction over the parties and the subject matter of this action, pursuant to 28 U.S.C. § 1331, 29 U.S.C. §216(b), a42 U.S.C. §2000e-5, and 28 U.S.C. §1367. This action properly lies in the Western District of Oklahoma, pursuant to 28 U.S.C. §1391(c), because the claims herein arose in this judicial district.   Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction

1

over the state law claims alleged herein because they are so related to the federal claims that they form part of the same case or controversy at issue herein.

## PARTIES

4.     Plaintiff is, and was at all times hereinafter mentioned, domiciled in and a citizen of the State of Oklahoma and Plaintiff is a female.

5.     Plaintiff is an employee as defined by Title VII of the Civil Rights Act, the Oklahoma Anti-Discrimination Act, and the Equal Pay Act.

6.     Defendant is a domestic for profit corporation, conducting business within the Western District of Oklahoma.

7.     Defendant is an employer as defined by Title VII of the Civil Rights Act, the Oklahoma Anti-Discrimination Act, and the Equal Pay Act.

8.     In conformance with Title VII statutory prerequisites, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). The EEOC has now issued a Right to Sue letter for Plaintiff. Accordingly, the filing of this action is timely made.

## OPERATIVE FACTS

9.     Brenda Shipman was hired in April 2013.   Her job title was Cashier in Front End department.   Ms. Shipman's first pay was $9.00 hourly.   Ms. Shipman's supervisor was Kay.   The department consisted of whites, blacks, Hispanics, women, men and persons over 40.

10.   Shipman was at the time of her firing, the Deli Assistant Manager, earning $12.00 hourly. Her Supervisor was Debbie Moss, the Deli Manager.

11.   Discriminatory conduct regarding retaliation started around February 2016 by employer.

12.   Retaliation occurred before EEOC was contacted.   After EEOC was contacted, around three months after dismissal from job, Ms. Shipman was banned from the store for life.

13.   Ms. Shipman had frequented the store once a week.   Everyone was friendly. There wasn't any problem.   Then John, from the meat department, called to warn Ms. Shipman they were given instructions to call operations when she came in again so they could escort her out.   They didn't give Ms. Shipman a reason.   Ms. Shipman was escorted out by Wayne and James, the operations managers, while she got her groceries.   John was fired after that.   John felt like Ms. Shipman hadn't caused trouble when she was there, and she should have been called by H.R., if they didn't want her there, instead of making a spectacle of her.

14.   Ms. Shipman requested a meeting with the General Manager, David Blackburn, and with Michele from H.R.   The meeting was in Michele's office and they denied it was a boys club.   Ms. Shipman was fired two weeks after requesting the meeting.

15.   Ms. Shipman made the complaint around March 1, 2017.

16.     Ms. Shipman's complaint was about the boy club.   She was told by Scott Odom, she was making all that she could make in the deli and when she asked for an operations position or to start training for it, he said, "they would never hire another woman in OPS after their experience with Kay at the Moore store."   Kay is David Blackburn's mother in law, so that is how she got that position to start with.

17.     After Ms. Shipman was in contact with EEOC, the employer made up the allegation that she was trashing manager Debbie Moss.   Ms. Shipman knew that wasn't true because she loved her manager, trained her for her job and backed her to all employees.   Ms. Shipman had nothing negative to say about her.

18.     Ms. Shipman believes the name, title, and work relationship of who caused this action to be taken against her was unanimously between OPS and H.R. after she complained.

19.     The adverse action was taken against Ms. Shipman when she was dismissed.

20.     The reason the adverse action was given to Ms. Shipman was because of alleged gossiping, but they could not tell her what she said or whom she had talked to.   She knew right then because she called them on the boys club.

21.     People who allegedly did the same conduct as Ms. Shipman but who were not subjected to same adverse action as her was:   Front End, Kay, Manager over Cashiers is known for trashing everyone while in the smoking area.   The

manager for the Deli, Benita, was only transferred to the meat department for gossiping.    Subordinates were written up or suspended, never fired.

22. Ms. Shipman doesn't know of anyone fired for gossiping.    They were warned, written up to 3 times before suspension.    Never in 3 years had anyone in her knowledge been fired.

23. Ms. Shipman was told she could talk to anyone that was manager or higher titles about anything and as long as no one ever heard their conversation.    Ms. Shipman could talk about anything.    Ms. Shipman had talked many times before.

24. The date that the discriminatory conduct regarding equal pay violations took place was around February 1- March 1, 2016.

25. Ms. Shipman had been promoted 2 or more times.

26. The company did give formal evaluations.    Ms. Shipman's evaluations were given by David Blackburn the General Manager or Scott Odom of Operations. Ms. Shipman's ratings were above average.

27. Ms. Shipman states that she was paid less wages because of her sex.    Cooks that were male were paid up to $14.00 hourly.    Females weren't ever paid more than $10.00 hourly.

28. Others in Ms. Shipman's department paid at a higher rate performing same/similar job duties:    Bryan was making $11.00 an hour for night assistant supervisor.    His supervisor was making around $2.00 less because she was

5

female.   Jacob was making $14.00 an hour as prep cook.   Sara worked same job and was making $9.50.

29.     The difference between Ms. Shipman's duties and those of other employees who were paid at a higher rate than her was:   Ms. Shipman was responsible for scheduling, Evals, write ups, working OT, stocking, ordering, cleaning and managing employees for $12.00 an hour at the end.   When Bryan only had to manage employees, work with cast omens with wages more than Ms. Shipman's.

30.     Ms. Shipman doesn't have any information about persons working in another departments performing the same/similar duties as her and paid at a higher rate.

31.     Ms. Shipman did discuss the difference in pay with a company official/union representative.   She discussed this with:   David Blackburn the General Manager, Scott Odom in Operations, Debbie Moss the Deli Manager, Benita the ex-Deli Manager.

32.     Scott Odom said the reason for the difference in wages was that women are gossiping and full of drama.   He said they hired Kay (Front End Manager over Cahiers) to the Moore store and she was so bad that they will never hire another woman for operations or higher again.

33.     When Ms. Shipman was responsible for training her own boss, she asked for more money and they told her she was making the highest she could make at

Crest.   Ms. Shipman said the cooks that work under her make more than she does.   So she ask them to make her a cook and she would just step down. They denied the cooks were making more and told her not to discuss wages with the cooks or she would be fired.   However, Ms. Shipman was doing Evals on the cooks and it showed on the Evals what they were making and how much raise they were going to get.   When Ms. Shipman told them how she knew what they were making, they stopped giving her that information on the Evals.

34.     The differences between the rates of pay can't be explained by differences in seniority.   Ms. Shipman had worked a year or 2 more for men making more than her and was only there for 1 or 2 years.

35.     When Ms. Shipman was told she was being let go for gossiping, she asked what was she supposed to have said and they said they weren't going to get into that.   When Ms. Shipman filed for unemployment, they told her she made a statement in the teal room to a Front End Manager that she felt sorry for the 2 managers of the Deli because they get in trouble for doing what operations tell them to do.

36.     Ms. Shipman was told at Thanksgiving not to talk in front of subordinates. They would miss understand the context of what she was saying.   Ms. Shipman told them she had no office to keep things private, so she began only speaking in the teal room, scanning office, or cooler.   Ms. Shipman walked

Debbie Moss to her car every day and they spoke privately at her car. Operations told Ms. Shipman it was ok to speak to any manager that was equal to her position, Operations manager or higher but not to speak to subordinates. Ms. Shipman abided by these rules faithfully.

## FIRST CAUSE OF ACTION

37.     For this, the first count of her Complaint, Shipman incorporates herein by reference all of the allegations heretofore made, and further alleges and states as follows:

38.     Defendant engaged in policies and practices of employment which recklessly, and in the alternative, willfully discriminated against Shipman on the basis of her sex, by paying Shipman a lesser rate of pay than that paid to similarly situated males, which males perform the same or substantially similar job duties which require equal skill, effort and responsibility under the same or substantially similar working conditions in the same establishment.

39.     Said differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production or upon a factor other than sex.

40.     By paying Shipman a lesser rate of pay than that paid to males, Defendant has violated the provisions of the Equal Pay Act, 29 U.S.C. §206(d), with reckless disregard for that Act's proscriptions.

41.     Shipman performed work which required equal skill, effort and responsibility under substantially similar working conditions as the males therein, and Shipman was paid substantially less than those males used as the basis of comparison.

42.     As a direct and proximate result of said actions by Defendant, Shipman has suffered, is now suffering, and will continue to suffer lost wages and fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, physical injury as a result of intentional infliction of emotional distress, physical pain, humiliation, and other non-pecuniary losses.

43.     Defendant's actions were willful and done with reckless indifference to Shipman's rights as defined by the EPA.

## SECOND CAUSE OF ACTION

44.     For this, the second count of her Complaint, Shipman incorporates herein by reference all of the allegations heretofore made, and further alleges and states as follows:

45.     By discriminating against women on the basis of their gender in all facets of employment, Defendant has willfully and maliciously violated the dictates of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as well as the Civil Rights Act of 1991.

46.     As a direct and proximate result of Defendant's conduct, women have been systematically limited in their hires and promotions, they have been limited in

their compensation as compared to similarly situated males, and they have been

disciplined and discharged at a higher rate than their male counterparts.

47.     As a direct and proximate result of said actions by Defendant, Shipman, as well

as all other women, has suffered, is now suffering, and will continue to suffer lost

wages and fringe benefits, emotional pain, anxiety, inconvenience, mental

anguish, loss of enjoyment of life, physical injury as a result of intentional

infliction of emotional distress, physical pain, humiliation, and other

non-pecuniary losses.

## THIRD CAUSE OF ACTION

48.     For this, the third count of her Complaint, Shipman incorporates herein by

reference all of the allegations heretofore made, and further alleges and states as

follows:

49.     By retaliating against Shipman because she complained about her being

subjected to different terms, conditions and/or privileges of employment,

including compensation, as compared to similarly situated male counterparts,

Defendant has willfully and maliciously violated the dictates of the EPA,

specifically 29 U.S.C. §215(a)(3).

50.     As a direct and proximate result of said actions by Defendant, Shipman has

suffered, is now suffering, and will continue to suffer lost wages and fringe

benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of

enjoyment of life, physical injury as a result of intentional infliction of emotional distress, physical pain, humiliation, and other non-pecuniary losses.

51.     Defendant's actions were wilful and done with reckless indifference to Shipman's rights as defined by the EPA.

## FOURTH CAUSE OF ACTION

52.     For this, the sixth count of her Complaint, Shipman incorporates herein by reference all of the allegations heretofore made, and further alleges and states as follows:

53.     By retaliating against Shipman because she complained about her being subjected to different terms, conditions and/or privileges of employment, including compensation, as compared to similarly situated male counterparts, Defendant has willfully and maliciously violated the dictates of Title VII of the Civil Rights Act of 1964, as amended.

54.     As a direct and proximate result of said actions by Defendant, Shipman has suffered, is now suffering, and will continue to suffer lost wages and fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, physical injury as a result of intentional infliction of emotional distress, physical pain, humiliation, and other non-pecuniary losses.

55.     Defendant's actions were wilful and done with reckless indifference to Shipman's rights as defined by Title VII, thus warranting the award to Shipman of punitive damages.

## FIFTH CAUSE OF ACTION

56.     For this, her fifth count of her Petition, the Plaintiff incorporates herein by reference all of the allegations heretofore made, and further alleges and states as follows:

57.     By virtue of the acts described hereinabove, the Plaintiff has been subjected to a hostile work environment, as well as Quid pro quo harassment, violative of Title VII of the Civil Rights Act of 1964, as amended.

58.     As a direct and proximate result, Defendant Vice was allowed to continually sexually harass Plaintiff throughout the tenure of her employment with Defendant corporation.

59.     As a direct and proximate result of Defendant corporations conduct, Plaintiff has suffered, is now suffering, and will continue to suffer lost wages and fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, physical injury, physical pain, humiliation, and other non-pecuniary losses.

60.     Defendant has engaged in the conduct alleged against this Plaintiff with reckless indifference to Plaintiff, thus warranting an award of punitive damages.

## SIXTH CAUSE OF ACTION

61.     For this, her sixth count of her Petition, the Plaintiff incorporates herein by reference all of the allegations heretofore made, and further alleges and states as follows:

62.     That Plaintiff is a member of a protected class, to wit: female.

63.     That Oklahoma law prohibits sex discrimination, harassment and retaliation in

        the workplace (as set forth in the OADA, 25 O.S. § 1302, et. seq.), and permits

        an aggrieved employee to bring a claim against an employer for permitting sex

        discrimination, harassment and retaliation.

64.     That Plaintiff was discriminated against and harassed due to hersex and

        retaliated against during his employment as prohibited by the OADA.

65.     That Defendant ratified the acts of its agents and employees by failing to take

        remedial action upon notice by Plaintiff of the circumstances or by allowing

        the acts to occur after receiving actual or constructive notice of those acts.

66.     That the conduct complained of constitutes illegal sex discrimination and

        retaliation in violation of the OADA, 25 O.S. § 1302, et. seq.

**WHEREFORE**, Plaintiff prays for a declaration that the conduct engaged in by Defendant is in violation of Plaintiff's rights; for an award to Plaintiff for all amounts she should have been paid throughout her employment if she had been properly paid without regard to her gender; for an award to Plaintiff for equitable relief of back salary; liquidated damages; compensatory and punitive damages, including emotional distress, mental anguish, and humiliation, in an amount in excess of One Hundred Thousand Dollars ($100,000.00); costs and expenses, as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any such other legal or equitable relief this Honorable Court deems just and proper.

Respectfully submitted,

HALL, NALLEY & HOLLOWAY, PLLC

_____/s/ Terry A. Hall_____
Terry A. Hall, OBA #10668
P.O. Box 283
Shawnee, Oklahoma 74804
(405) 260-9329
(405) 260-9330 (facsimile)
thall@okhnhlaw.com

Attorneys for Plaintiff

14